# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA                                                          PLAINTIFF

v.                               No. 4:05CR00033 JLH

ALLEN POLK                                                                        DEFENDANT

## **OPINION**

Allen Polk filed a pro se motion to dismiss the indictment against him on the ground that the United States has violated two provisions of the Interstate Agreement on Detainers Act ("IADA"), 18 U.S.C. app. 2 § 2, Art. IV(c) and (e). First, Polk argues that the United States violated Art. IV(c), the "speedy trial" provision, because it failed to commence his trial on the federal charges pending against him within 120 days of his March 2006 transfer from Arkansas state custody to federal custody. Second, Polk argues that the United States violated Art. IV(e), the "anti-shuttling" provision, by transferring him from federal custody back into state custody in May 2006 without having brought him to trial. This motion requires the Court to determine whether a violation of the IADA has occurred and, if so, whether the charges against Polk should be dismissed with or without prejudice. For the reasons stated below, the indictment against Polk will be dismissed without prejudice.

## **I.**

Polk was indicted on February 2, 2005, for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1), and for possession of a firearm with a removed serial number, a violation of 18 U.S.C. § 922(k). On February 15, 2005, Polk appeared and entered a plea of not guilty. A few days later, in Arkansas state court, Polk was sentenced to a term of six years of imprisonment for the conduct underlying the federal indictment. After Polk began serving this

sentence with the Arkansas Department of Correction, a federal detainer was lodged against him to secure his presence in the federal proceedings.

On October 28, 2005, this Court scheduled Polk's trial on the federal charges for February 6, 2006. On January 31, 2006, however, Polk filed notice of his intent to rely on a defense of insanity and requested a mental evaluation. The United States then moved for a mental evaluation, and, in response to the United States's motion, Polk waived "any speedy trial requirements due to his mental evaluation." On February 2, the Court granted the government's motion, ordered that Polk be remanded to federal custody for a psychiatric examination, and continued his trial. On March 8, the Court approved a petition for writ of habeas corpus ad prosequendum ordering that Polk be transported to a federal facility "in New York for a psychological exam and that after that has been concluded that [Polk] be returned to the custody of the Jailer."

On March 16, 2006, Polk was taken into federal custody for the psychiatric examination. Eight days later, on March 24, the Court rescheduled Polk's trial for August 7, 2006. On May 17, following his psychiatric examination, Polk was returned to the Pulaski County Jail. At that point, Polk was back in Arkansas state custody. On July 7, 2006, Polk was released by the state on parole. Because of the detainer, he was delivered to the United States Marshals Service. On July 20, 2006, after a bond hearing, the Honorable John F. Forster, Jr., United States Magistrate Judge, ordered that Polk be detained pending trial.

On July 26, 2006, Polk filed a motion for continuance of his trial date "to obtain an independent evaluation of his mental state," stating that he "waive[d] any speedy trial requirements due to this continuance." The Court granted this motion on August 3, 2006, rescheduling Polk's trial for December 4, 2006. On December 4, however, during a hearing before this Court, Polk filed the

instant motion to dismiss and a second motion, pro se, for continuance. The Court granted Polk's pro se motion for continuance, rescheduling the trial for April 9, 2007.

## II.

The IADA prescribes procedures for transferring a prisoner from the jurisdiction in which he is incarcerated to another jurisdiction seeking to prosecute him. Article IV of the IADA provides in pertinent part:

> (c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
>
> * * *
>
> (e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . , such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. app. 2 § 2, Art. IV. The IADA further provides that if an action on the indictment is not brought to trial within the 120-day period, the court of the jurisdiction where the indictment is pending "shall enter an order dismissing the same with prejudice." *Id.* § 2, Art. V(c).

Under this agreement, the term "State" refers to either the United States or an individual state of the United States. *Id.* § 2, Art. II(a). A "sending State" is the State in which the prisoner is incarcerated at the time that a request for custody of the prisoner is initiated. *Id.* § 2, Art. II(b). The "receiving State" is the State in which trial is to be had on an outstanding indictment, information, or complaint against the prisoner. *Id.* § 2, Art. II(c). The United States and Arkansas are both parties to the IADA. *See id.* § 2; ARK. CODE ANN. § 16-95-101. Thus, in Polk's case, Arkansas is the sending State and the United States is the receiving State.

Although Articles IV and V provide that the court "shall" dismiss an indictment with

3

prejudice when violations of Article IV(c) or (e) occur, the IADA has been amended with special provisions that apply when the United States is the receiving state.

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State --
>
> > (1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and
> >
> > (2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

18 U.S.C. app. 2 § 9.

### III.

As explained below, the United States has not violated Article IV(c), the "speedy-trial" provision, but it violated Article IV(e), the "anti-shuttling" provision, when it returned Polk from federal custody back to Arkansas state custody without first bringing him to trial on the pending federal charges. The indictment against Polk must therefore be dismissed. Because the United States is the receiving State in this case, however, the Court has discretion to dismiss with or without prejudice. Upon consideration of the factors set forth in § 9(1), the Court dismisses the indictment against Polk without prejudice.

**A.      The Anti-Shuttling Provision**

The United States does not deny that it returned Polk from federal custody to Arkansas state custody before bringing Polk to trial on the federal charges pending against him. The government

4

argues that this transfer did not violate the IADA, however, because this Court issued an order, the writ of habeas corpus ad prosequendum, stating that Polk was to be "returned to the custody of the Jailer" following his psychological examination in federal custody. The government contends that this order met the requirements of § 9(2) because it gave Polk "reasonable notice" of his impending return to Arkansas state custody and Polk failed to object or request a hearing between the date that this order was issued, March 8, and the date of his return to state custody, May 17.

While § 9(2) does provide that a prisoner may be returned to state custody without violating the IADA under certain circumstances, the writ of habeas corpus ad prosequendum issued by this Court does not comport with the plain language of that section. The IADA is not violated if an appropriate court issues an order "after reasonable notice to the prisoner and the United States and an opportunity for a hearing." *See* 18 U.S.C. app. 2 § 9(2). Before the writ here was issued, Polk was given neither notice that he would be returned to state custody nor an opportunity for a hearing on the matter.

The Supreme Court has noted that, when a detainer is lodged against a prisoner and no action is taken on it, the prisoner may be denied privileges within the prison and rehabilitation may be frustrated. *United States v. Mauro*, 436 U.S. 340, 360-61 & n.26, 98 S. Ct. 1834, 1847, 56 L. Ed. 2d 329 (1978). One of the purposes of the IADA is "to reduce disruption in prisoner privileges and programs which can result when there are repeated transfers between jurisdictions." *United States v. Eaddy*, 595 F.2d 341, 344 (6th Cir. 1979). "[T]he rights created by the Agreement are for the benefit of the prisoner. They exist for his protection and are personal to him." *Id.* Moreover, the IADA "shall be liberally construed so as to effectuate its purposes." 18 U.S.C. app. 2 § 2, Art. IX.

A prisoner may waive these rights but only if he "is aware of and understands the provisions

5

of Article IV, as well as his rights thereunder," and "so long as the waiver is voluntary." *Eaddy*, 595 F.2d at 344. Thus, a prisoner can waive his rights under Article IV(e) by requesting a transfer back into state custody. *See, e.g.*, *United States v. Ford*, 550 F.2d 732, 742 (2d Cir. 1977); *United States v. Scallion*, 548 F.2d 1168, 1170 (5th Cir. 1977). A prisoner does not waive these rights, however, merely by failing to object to such a transfer where there is no evidence that the prisoner knew of his Article IV rights and voluntarily relinquished them. *Eaddy*, 595 F.2d at 345.

> We do not read the mandatory language of Article IV as requiring a prisoner to make an affirmative request as to the situs of his incarceration, following his transfer to the requesting jurisdiction for trial on outstanding charges, in order to invoke the sanctions of the Agreement.
>
> The contention made by the Government would shift the burden of compliance with the provisions of the Agreement away from the Government, where Congress placed it, and onto the prisoner. This is contrary to the intent of the Agreement and to the obligatory language of Article IV. We conclude that appellant did not waive his substantive rights under Article IV(e) by failing to state a preference as to his place of incarceration. We note there is no evidence that appellant knew of his Article IV rights and thereafter voluntarily relinquished them.

*Id.*

Polk did not ask to be transferred back into Arkansas state custody following his mental evaluation. The record contains no evidence that he knew of his Article IV rights and voluntarily relinquished them. While the record contains no evidence that the United States sought to violate Polk's rights or otherwise acted in bad faith, the burden of ensuring compliance with the IADA's provisions nevertheless rested on the United States. *See id.*; *People v. Allen*, 744 P.2d 73, 77 (Colo. 1987), *superceded by statute on other grounds*, *People v. Newton*, 764 P.2d 1182 (Colo. 1988) (the prosecutor's burden of compliance in an Article IV proceeding "includes the duty to keep track of the proceeding [and] to make the court aware of the time limits and other requirements of the IAD").

Polk's return from federal custody to Arkansas state custody in May 2006, which occurred

6

before resolution of the federal charges pending against him, violated Polk's rights under the IADA's anti-shuttling provision, 18 U.S.C. app. 2 § 2, Art. IV(e). The remedy for this violation under the statute is mandatory dismissal of the federal charges. *See id.*

**B.      The Speedy-Trial Provision**

Under the IADA's "speedy-trial" provision, 18 U.S.C. app. 2 § 2, Art. IV(c), the United States had 120 days from the date that Polk was taken into federal custody, March 16, 2006, to bring him to trial. This provision, however, allows the Court to "grant any necessary or reasonable continuance" for "good cause shown in open court, the prisoner or his counsel being present[.]" *Id.* Polk recognizes that continuances can extend the 120-day time limit, but argues that the three continuances granted by this Court since March 16, 2006, did not toll the 120-day time period because the continuances were not granted "in open court" with Polk or his counsel present.[1]

Polk's argument fails, however, because all of the continuances were granted to accommodate Polk's requests. The first continuance, granted on March 24, 2006, was granted to allow time for Polk's mental evaluation. Polk now asserts that "the court, *sua sponte*, entered an order of continuance on March 24, 2006, continuing the trial until July 28, 2006,[2] due to the mental evaluation conducted at the government's request." This argument ignores the fact that the government requested this evaluation only after Polk filed a notice of insanity defense, which included Polk's own request for a mental examination. The continuances granted on August 3, 2006, and December 4, 2006, were granted in response to Polk's motions for continuance on July 26 and

---

[1] Polk's assertion that neither he nor his counsel "was present in court when any of the three continuances were granted" is incorrect. Polk was present in court when his December 4, 2006, motion for continuance was granted.

[2] Polk is mistaken as to this date. The Court continued the trial until Aug. 7, 2006.

7

December 4, respectively. Moreover, Polk expressly waived any speedy-trial requirements due to his mental evaluation and his July 26 motion for continuance.

A prisoner may not seek treatment inconsistent with his speedy-trial rights under the IADA and then recant after willingly accepting such treatment, as this conduct constitutes a waiver of these rights. *New York v. Hill*, 528 U.S. 110, 114-18, 120 S. Ct. 659, 664-66, 145 L. Ed. 2d 560 (2000). Polk's argument that the continuances he requested could properly be granted only "in an adversarial context" after a "hearing in open court" is specious. The IADA's specification that "the 'prisoner or his counsel' must be present suggests that it is directed primarily, if not indeed exclusively, to prosecution requests that have not explicitly been agreed to by the defense." *Id.* at 116, 12 S. Ct. at 665. Polk's argument suggests that the Court should have held hearings to allow Polk to object to his own motions before granting them.

Even if a speedy-trial violation occurred, however, the outcome of the instant motion for dismissal would not be affected. The remedy for a speedy-trial violation is mandatory dismissal, *see* 18 U.S.C. app. 2 § 2, Art. V(c), and the Court has already determined that Polk's indictment must be dismissed due to the anti-shuttling violation discussed above.

**C.     Dismissal With or Without Prejudice**

To determine whether the indictment should be dismissed with or without prejudice, the Court must consider: (1) the seriousness of the offense; (2) the facts and circumstances leading to dismissal; and (3) the impact of a second indictment on the administration of the IADA and on the administration of justice. 18 U.S.C. app. 2 § 9(1).

### 1. Seriousness of the Offense

The IADA does not specify the criteria for analyzing the seriousness of an offense, but the Eighth Circuit has addressed this issue by examining the nature of the conduct and the potential sentence. *See United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2005). The statutory penalty for being a felon in possession of a firearm includes imprisonment for a term up to 10 years. 18 U.S.C. § 924(a)(2). The penalty for possession of a firearm with the serial number removed includes imprisonment for a term up to 5 years. *Id.* § 924(a)(1)(B).

Polk acknowledges that other federal courts have determined that dismissal without prejudice was appropriate in cases involving felon-in-possession charges. In *McKinney*, for example, the Eighth Circuit found that the defendant's felon-in-possession charges were serious offenses, noting that the maximum penalty was ten years of imprisonment. *McKinney*, 395 F.3d at 841. Polk argues, however, that his case does not involve extenuating facts and circumstances similar to those presented in *McKinney*, which informed the Eighth Circuit's decision, as *McKinney* involved a defendant who fled police for 14 miles, continued to flee on foot after abandoning his vehicle, and possessed four bags of methamphetamine, a gun, and ammunition when arrested. *See id.*

The Court recognizes that Polk's alleged conduct may be less egregious than the conduct of the defendant in *McKinney*, but the facts remain that Polk is an individual with a significant criminal history and that he is charged with offenses involving firearms. Given the potential danger to society stemming from offenses involving dangerous weapons, the Court cannot say that the offenses were not sufficiently serious in nature to require that the dismissal be without prejudice. *See United States v. Martinez*, 276 F. Supp. 2d 1168, 1175-76 (D.N.M. 2004) (seriousness of the offense weighed in favor of dismissal without prejudice where defendant had prior convictions for burglary and escape

and was charged with being a felon in possession of a firearm and being a felon in possession of a stolen firearm).

2. **Facts and Circumstances Leading to the Dismissal**

Dismissal without prejudice is proper when the government's IADA violation is caused by mere error, as opposed to bad fad or a pattern of negligence. *See McKinney*, 395 F.3d at 841. As explained above, Polk was returned to Arkansas state custody following his mental examination in federal custody pursuant to a directive in the writ of habeas corpus ad prosequendum. Polk argues that the "violation appears to be a systemic misunderstanding of the requirements of the IAD or a systemic failure to insure that the IAD requirements are met," but he offers no evidence to support this contention. In the absence of such evidence, the Court will not engage in speculation as to whether the United States has a systemic problem in complying with the IADA. *Cf. United States v. Pope*, 183 F. Supp. 2d 773, 777-78 (D. Md. 2001) (holding that dismissal with prejudice was proper where prisoner's IADA rights were violated twice and Deputy United States Marshall testified that these violations were not isolated events, but the result of inadequate procedures for tracking, transporting, and housing detainees in federal custody). The Court is convinced that the violation here was the result of an oversight, not an intent to violate Polk's rights under the IADA. Moreover, this whole episode occurred in an effort to accommodate the need for the mental evaluation, which Polk had requested, at the expense of the federal government. This factor therefore supports dismissal without prejudice. *See McKinney*, 395 F.3d at 841.

3. **Impact of a Second Indictment**

In considering the impact of a second indictment, courts should focus on whether the prosecution had an improper motive when it committed the IADA violation and whether the

violation prejudiced the defendant. *Id.* at 841-42. Citing *Pope*, *supra*, Polk argues that allowing the United States another opportunity to indict him would be detrimental to the administration of the IADA because it would trivialize the United States's violation. Further, Polk contends, another prosecution would seriously prejudice him because he has already been punished by the Arkansas Department of Correction for the underlying conduct.

Polk's argument that dismissal without prejudice would trivialize the United States's IADA violation is not persuasive. Because the violation appears to be the result of error, as opposed to bad faith or governmental misconduct, dismissal without prejudice is a sanction that seems adequate to raise the United States's awareness of its obligations under the IADA. *Cf. McKinney*, 395 F.3d at 841-42. Polk's reliance on *Pope* is misplaced. While the court in *Pope* held that dismissal without prejudice "would be an affront [to] the administration of the IAD," the court emphasized that the IADA violation in that case was serious in nature, involving "an ongoing tolerance, by United States government officials, of a system that repeatedly failed to honor rights and obligations conferred by the IAD." *Pope*, 183 F. Supp. 2d at 778-79 & n.9. Such circumstances are not presented in this case. Here, as noted, the violation was an innocent mistake that resulted ultimately from Polk's request for a mental evaluation.

Polk's contention that he would be prejudiced if the United States is allowed to prosecute him on the outstanding federal charges also misses the mark. Prosecution of a defendant under both federal and state laws for the same underlying conduct is "prejudicial" to the defendant in that it allows a defendant to be punished twice, but this prejudice does not stem from the IADA violation. Had the United States complied with the IADA, it would have been able to prosecute Polk under federal law even though he has already been prosecuted under Arkansas law. If the United States

11

is allowed to indict Polk again, he will not be subject to a greater punishment than he would have received had the IADA violation not occurred. Dismissal without prejudice therefore would not be detrimental to the administration of justice. To the contrary, allowing a defendant to escape punishment for violating federal law, if he is guilty, is prejudicial to the interests of justice. *See Martinez*, 376 F. Supp. 2d at 1170-72, 1176-77 (holding that justice would be served by dismissal without prejudice because defendant, who had already served sentence in state prison for underlying conduct, should be held accountable for federal firearms offenses).

The Court recognizes that dismissal without prejudice will place Polk in a position of uncertainty for a time, as he will be subject to further proceedings if indicted again, and that such uncertainty may be considered a form of prejudice that runs counter to the purposes of the IADA. *See Pope*, 183 F. Supp. 2d at 779. This type of prejudice to Polk is insufficient to warrant dismissal with prejudice, however, because it is outweighed by the seriousness of Polk's alleged offenses and the interests of justice. *Cf. McKinney*, 395 F.3d at 841-42; *Martinez*, 376 F. Supp. 2d at 1175-77.

## CONCLUSION

Polk's right to trial within 120 days of being taken into federal custody, as provided in 18 U.S.C. app. 2 § 2, Art. IV(c), has not been violated because the Court granted continuances in accordance with Polk's requests that tolled this time period. The United States violated Polk's rights under 18 U.S.C. app. 2 § 2, Art. IV(e), however, when it returned him from federal custody to state custody without first bringing him to trial on the federal charges pending against him. The indictment against Polk must therefore be dismissed. *See id.* Upon considering the relevant factors as required by 18 U.S.C. app. 2 § 9(1), an order will be entered dismissing the indictment without prejudice.

IT IS SO ORDERED this 15th day of March, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE